BRENDA L. MORRISON,   )
         )
    Plaintiff,   )
  v.      )   CIVIL ACTION
         )   NO. 15-13957-JGD
CAROLYN W. COLVIN, Commissioner of )
Social Security Administration,  )
         )
    Defendant,   )

## MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS REGARDING DENIAL OF SOCIAL SECURITY BENEFITS

May 15, 2017

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Brenda L. Morrison ("Morrison"), has brought this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in

order to challenge the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying her claims for Social Security Disability Insurance ("SSDI") and

Supplemental Security Income ("SSI") benefits. The matter is before the court on the

"Plaintiff's Motion for an Order Reversing or Remanding the Decision of the Commissioner"

(Docket No. 14), by which the plaintiff requests that the court reverse the decision to deny her

claims for benefits or, alternatively, remand the matter to the Social Security Administration for

further administrative proceedings. It is also before the court on the "Motion to Affirm the

Commissioner's Decision" (Docket No. 16), by which the Commissioner is seeking an order

upholding her determination that Morrison is not disabled within the meaning of the Social Security Act, and is therefore not entitled to SSI or SSDI benefits.  At issue is whether the Administrative Law Judge ("ALJ"), in reaching his decision that Morrison was not disabled, erred by failing to give controlling weight to the opinions of Morrison's primary care physician, Sofia Chu, M.D., regarding the limiting effects of the plaintiff's physical impairments.  Also at issue is whether the ALJ's findings regarding the plaintiff's residual functional capacity, and in particular his assessment of Morrison's credibility, are supported by substantial evidence.  As detailed below, this court finds that the ALJ committed no error, and that his decision must be upheld on appeal.  Therefore, and for all the reasons described herein, the plaintiff's motion to reverse or remand is DENIED, and the Commissioner's motion to affirm is ALLOWED.

## II.  STATEMENT OF FACTS[1]

Morrison was born on April 6, 1961, and was 51 years old at the time she applied for Social Security benefits.  (Tr. 146, 153).  She has a bachelor's degree in psychology, which she received in 1984, and a long work history as both an artist and an office worker.  (Tr. 31, 179).  Specifically, during the time period from January 1993 to August 2012, Morrison was self-employed as a glass artist, and ran a business with her husband creating and selling jewelry and various household goods.  (Tr. 32-33, 179).  Additionally, during the time period from April 1993 to December 2006, Morrison worked as a bookkeeper and office manager for a printing company, where she was responsible for supervising a staff of 20 people and was earning an annual salary of $30,000.  (Tr. 33, 179, 196).

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. ___."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 10.

The record reveals that Morrison stopped working on August 10, 2012, when she was admitted to the Quincy Medical Center after complaining of shortness of breath. (Tr. 247, 587, 618-22). She was diagnosed with bilateral pulmonary emboli and severe anemia, and remained hospitalized until August 20, 2012. (Tr. 588-89). During her hospitalization, Morrison received blood transfusions and iron to treat her anemia. (Tr. 34, 588). She also was given anticoagulation therapy and an inferior vena cava filter to treat her pulmonary emboli. (Tr. 34-35, 588). Although Morrison's anemia has resolved, she is expected to remain on coumadin for the remainder of her life in order to address her pulmonary condition. (Tr. 346, 353).

In addition to anemia and pulmonary emboli, the plaintiff has a history of morbid obesity, edema, GERD and obstructive sleep apnea. (Tr. 582, 719). Moreover, in November 2013, Morrison was referred to a rheumatologist, Michael York, M.D., due to her ongoing complaints of fatigue and diffuse pain. (Tr. 745-48). Dr. York conducted laboratory testing, and gave Morrison a working diagnosis of fibromyalgia complicated by obstructive sleep apnea and benign joint hypermobility syndrome. (Tr. 732-52). However, there is no indication that this diagnosis has ever been confirmed. The plaintiff claims that her persistent fatigue, chest pain and shortness of breath, combined with poor concentration and the inability to perform tasks on a consistent basis, preclude her from carrying out any type of gainful work activity. (Tr. 181-82, 248-49).

## Procedural History

On December 17, 2012 and January 3, 2013, Morrison completed applications for SSDI and SSI, claiming that she had been unable to work since August 10, 2012 due to pulmonary emboli, extreme anemia, shortness of breath, chest pain and persistent weakness. (Tr. 146-63,

178).  Her applications were denied initially on April 3, 2013, and upon reconsideration on

August 7, 2013.  (Tr. 61-62, 87-88).  Morrison then requested and was granted a hearing before

an ALJ, which took place on July 16, 2014 in Boston, Massachusetts.  (Tr. 26-48, 106-07, 120-

25).  The plaintiff, who was represented by counsel, appeared and testified at the hearing.  (Tr.

31-44).  The ALJ also obtained testimony from a vocational expert ("VE"), who described

Morrison's vocational background based on her past work experience, and responded to

hypothetical questions that were designed to determine whether jobs exist in the national and

regional economies for an individual with the same age, educational background, work

experience and residual functional capacity ("RFC") as the plaintiff.  (Id. at 44-46).  On August

20, 2014, the ALJ issued a decision denying Morrison's claims for benefits.  (Tr. 7-20).

Subsequently, Morrison filed a request for review of the ALJ's decision by the Social

Security Appeals Council.  (Tr. 6).  On September 30, 2015, the Appeals Council denied the

plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner for

purposes of review.  (Tr. 1-3).  Accordingly, the plaintiff has exhausted all of her administrative

remedies and the case is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### The ALJ's Decision

The ALJ concluded that from August 10, 2012 through the date of his decision on August

20, 2014, Morrison "ha[d] not been under a disability, as defined in the Social Security Act,"

which defines "disability" as "the inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment or combination of impairments

that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than 12 months."  (Dec. 1 and Finding #7; Tr. 10, 19).  See also 42

U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his

decision that Morrison was not disabled, performed the five-step sequential evaluation

required by 20 C.F.R. §§ 404.1520 and 416.920. The procedure resulted in the following

analysis, which is further detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See

Dec. 3-10, Tr. 12-19).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged

in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the

claimant is automatically considered not disabled and the application for benefits is denied.

See id. In this case, the ALJ found that Morrison had not engaged in such activity since August

10, 2012, the alleged onset date of her disability. (Dec. Finding #2; Tr. 12). Therefore, he

proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an

"impairment or combination of impairments which significantly limits [her] physical or mental

ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is

deemed not to be disabled and the application for benefits is denied. See Seavey, 276 F.3d at

5. Here, however, the ALJ determined that Morrison suffered from the severe impairment of

pulmonary embolism, as well as the non-severe impairment of obesity. (Dec. Finding #3; Tr.

12). Because he found that the plaintiff had an impairment that was severe, the ALJ's analysis

continued.

The third inquiry is whether the claimant has an impairment equivalent to a specific list

of impairments contained in Appendix 1 of the Social Security regulations, in which case the

claimant would automatically be found disabled. See Seavey, 276 F. 3d at 5; 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At this step, the ALJ concluded that the plaintiff's

impairments, either alone or in combination, did not meet or medically equal any of the listed

impairments.  (Dec. Finding #4; Tr. 15).  Consequently, he proceeded to step four.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such

that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  Thus, in order to

answer this inquiry, the ALJ must first make an assessment regarding the claimant's RFC.  In the

instant case, the ALJ assessed Morrison's RFC as follows:

> After careful consideration of the entire record, I find that the claimant
> has the residual functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) and 416.967(a)[2] except the claimant is able to lift
> ten pounds occasionally and less than ten pounds frequently.  She can
> stand or walk at least two hours in an eight-hour day.  She can sit (with
> normal breaks) about six hours in an eight-hour workday.  She has the
> ability to occasionally climb, balance, stoop, kneel, crouch or crawl.  She
> can never climb a ladder.  She must avoid concentrated exposure to
> extreme cold, extreme heat, humidity, hazards, fumes, odors, dust, gases,
> and poor ventilation.

(Dec. Finding #5; Tr. 16-17).  Morrison challenges this finding, and contends that it was not

based on substantial evidence.

In reaching his conclusion regarding the plaintiff's RFC, the ALJ followed well established

procedures.  He first considered all of Morrison's symptoms and the extent to which those

symptoms were consistent with the objective medical evidence and other evidence in the

record.  (Dec. 8; Tr. 17).  Accordingly, the ALJ reviewed the plaintiff's medical records, which

---

[2] 20 C.F.R. §§ 404.1567(a) and 416.967(a) define "sedentary work" as follows: "Sedentary work involves
lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files,
ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain
amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if
walking and standing are required occasionally and other sedentary criteria are met."

consisted of records covering the time period from August 2012 through May 2014. (See Dec. 4-5, 9; Tr. 13-14, 18). He also considered the available opinion evidence, as well as statements that Morrison had made at the hearing regarding her symptoms and the extent to which those symptoms interfered with her ability to carry out day-to-day activities. (Dec. 6, 9-10; Tr. 15, 18-19). Because the ALJ found that Morrison's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he went on to determine whether her subjective statements about the limiting effects of her symptoms were credible in light of the entire record. (See Dec. 8-9; Tr. 17-18). The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Dec. 9; Tr. 18). Morrison contends that the ALJ committed reversible error by failing to give controlling weight to the opinions of her treating physician, Sofia Chu, M.D., and by discounting the credibility of her claim of disabling physical symptoms. For the reasons described below, this court finds that the ALJ's handling of these matters was appropriate, and that his decision is supported by substantial evidence in the record.

After explaining the basis for his RFC determination, the ALJ compared Morrison's RFC to the physical and mental demands of her past work as a glass artist, office manager and bookkeeper, and considered the VE's testimony that an individual with Morrison's age, education, work history and RFC would be capable of returning to each of these positions. (Dec. 10; Tr. 19). The ALJ determined that each of the plaintiff's past jobs, as actually performed, "does not require the performance of work-related activities precluded by the

claimant's [RFC]." (Dec. Finding #6; Tr. 19). Accordingly, he concluded that Morrison was capable of performing her past relevant work. (Id.).

If the ALJ finds that the claimant has the RFC to perform her past relevant work, the claimant is deemed not to be disabled, and there is no need for the ALJ to proceed to step five. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) ("[a]t the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled"); Seavey, 276 F.3d at 5 (explaining that "[a]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process"). Because the ALJ in this case found that Morrison was capable of performing her past jobs as a glass artist, office manager and bookkeeper, he concluded that she was not disabled within the meaning of the Social Security Act without reaching step five of the sequential analysis. (See Dec. Findings #6-7, Tr. 19).

### III. ANALYSIS

In this action, Morrison is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act"). The Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ….

42 U.S.C. § 405(g) (emphasis added). The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts. We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Therefore, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). "[T]he Court must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'" Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 159 (D. Mass. 2010) (quoting Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B.  Plaintiff's Challenge to the ALJ's Treatment of Opinion Evidence

The plaintiff's principal challenge to the ALJ's decision concerns his treatment of the available opinion evidence in connection with his finding that the plaintiff retained the physical RFC to perform a limited range of sedentary work.  Specifically, Morrison contends that the ALJ committed error by crediting the opinions of a State agency physician, Swaran Goswami, M.D., over those of her treating physician, Dr. Chu, and by "substitut[ing] his own judgment about the outcome of Plaintiff's treatment for her pulmonary emboli, sleep apnea, chest pain and tightness, and shortness of breath rather than rely on medically supported opinion of the [plaintiff's] treating physician."  (Pl. Mem. (Docket No. 15) at 7-9).  For the reasons that follow, this court finds that there was substantial support for the ALJ's treatment of the available opinion evidence, and that his decision on that matter must be upheld.

### Relevant Opinion Evidence

On August 6, 2013, Dr. Goswami reviewed the available medical records and completed an assessment of Morrison's physical RFC in connection with the plaintiff's requests for

reconsideration of her claims for SSI and SSDI.  (Tr. 70-72, 82-84).  Dr. Goswami noted that

Morrison was a 52-year old obese female, who suffered from "several pulmonary emboli, blood

clots, extreme anemia, shortness of breath, chest pain, chest pressure, [and] persistent

weakness."  (Tr. 71, 83).  She determined that despite these limitations, Morrison retained the

capacity to lift 20 pounds occasionally and 10 pounds frequently; to stand and/or walk for

about 6 hours in an 8-hour workday; to sit for about 6 hours in an 8-hour workday; and to push

and/or pull without limitation.  (Tr. 70, 82).  In addition, Dr. Goswami opined that Morrison

could climb ramps or stairs occasionally, and balance, stoop, kneel, crouch and crawl

occasionally, but that she could never climb ladders, ropes or scaffolds.  (Tr. 70-71, 82-83).

While Dr. Goswami found that the plaintiff had no manipulative, visual or communicative

limitations, she recommended that Morrison avoid concentrated exposure to extreme cold,

extreme heat, humidity, fumes, odors, dust, gases, poor ventilation and hazards such as

machinery and heights.  (Tr. 71, 83).  Accordingly, Dr. Goswami concluded that Morrison's

impairments did not preclude her from performing work at the light level of exertion.[3]

While the record contains no other assessments of Morrison's RFC, it does contain

opinion evidence from Dr. Chu, one of the plaintiff's primary care physicians.  (See Tr. 752).

---

[3] The social security regulations define "light" work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

Specifically, on June 30, 2014, Dr. Chu wrote a letter in which she stated in relevant part as follows:

> Brenda Morrison, DOB: 04/06/1961 is a patient at Manet Community Health Center. I am writing on her behalf to inform you of her inability to work based on the current findings:
>
> 1. Pulmonary embolism – since August 2012, patient has continued to experience daily shortness of breath and chest pain, which is currently still being evaluated. She has been on blood thinning medication since the first incident, and also has a[n] inferior vena cava filter in place. She has shortness of breath with minimal exertion, which makes it difficult to work any jobs that require her to bend, lift, move things or walk short distances.
>
> 2. Chronic fatigue and muscle pain – working diagnosis is fibromyalgia and mixed connective tissue disease. This makes it difficult to stand for long periods of time because it induces pain in her joints.
>
> 3. Anxiety/depression – this is a result of her chronic medical issues that she faces daily, and her financial stressors.
>
> 4. Foot pain – gout verses arthritis verses connective tissue disorder, intermittent, but persistent and make it difficult to stand or walk for periods at a time.

(Id.). Dr. Chu further stated that in her opinion, Morrison "is considered physically disabled, until the issues above can be resolved or clarified." (Id.).

### ALJ's Handling of the Opinion Evidence

The ALJ considered Dr. Chu's opinions in connection with his finding regarding Morrison's RFC. (Dec. 9; Tr. 18). He first noted that questions of disability are reserved for the Commissioner. (Id.). Therefore, the ALJ declined to credit Dr. Chu's assertion that Morrison was disabled and incapable of working. The ALJ also stated that he had given "less weight" to Dr. Chu's opinion. (Id.). As the ALJ explained in his written decision:

> Dr. Chu states various limitations resulting from the claimant's limitations, but she does not fully explain to what degree these limitations would be. For example, she states it is difficult for the claimant to stand for long periods or to walk short distances. Further, she suggests possible diagnoses the claimant could have. She indicates that the claimant could have fibromyalgia, but the record does not show evidence of positive trigger points on examination. She discusses the claimant having anxiety and depression, but there is no formal diagnosis of either of these impairments and the claimant is not in treatment for emotional impairments. She remarks about foot pain that may be related to one of several conditions. She remarks that this makes it difficult for the claimant to stand or walk for periods without explaining how long. Consequently, I have restricted the claimant's level of exertion to that of sedentary to accommodate limited walking and standing ability as a sedentary job is done primarily in a seated position.

(Id.).

The ALJ also explained that he had given "some weight" to Dr. Goswami's assessment of the plaintiff's physical RFC. (Dec. 10; Tr. 19). In connection with this decision, the ALJ acknowledged that the State agency physician had no opportunity to examine the plaintiff. (Id.). However, he noted that under the social security rules, the opinions of such physicians are "entitled to consideration in conjunction with all of the evidence." (Id.). The ALJ further explained that he had credited Dr. Goswami's opinions because they were "generally consistent with and supported by the record as a whole." (Id.).

Although the ALJ relied on Dr. Goswami's assessment, he rejected the State agency physician's opinion that Morrison retained the capacity to perform work at the light exertional level. Instead, he explained that he had reduced the Morrison's exertional level to sedentary based on both the medical evidence and the plaintiff's testimony at the hearing. (Id.). As described above, the ALJ also credited Dr. Chu's opinion that Morrison's impairments limited her ability to stand or walk for more than short periods of time.

This court finds that the ALJ's findings on these matters were both appropriate and well supported by the evidentiary record.  As an initial matter, the ALJ was not required to accept Dr. Chu's opinion that Morrison was "physically disabled" and incapable of working.  (See Tr. 752).  Under the social security regulations, "the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."  Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (quoting Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)) (alteration in original).  Consequently, the opinion of a treating source that a claimant is disabled from working "[is] not given special significance by mere virtue of the existence of a treating relationship."  Amaral, 797 F. Supp. 2d at 162.  There was nothing improper about the ALJ's refusal to adopt Dr. Chu's view on this issue.

To the extent Morrison contends that the ALJ was otherwise required to give controlling weight to the opinions of Dr. Chu, her argument is unpersuasive.  Pursuant to the social security regulations, "[c]ontrolling weight will be given to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the record."  Bourinot v. Colvin, 95 F. Supp. 3d 161, 175 (D. Mass. 2015) (quoting 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)).  However, this so-called "treating source rule" does not necessarily compel an ALJ to adopt a treating physician's opinions or even give them more weight than opinions from non-treating sources.  Under the relevant authority, "[c]ontrolling weight *may not* be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (emphasis added).  Moreover, "[t]he law in

this circuit does not require the ALJ to give greater weight to the opinions of treating physicians" even when there is support for those opinions in the medical records.  Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)).  The ALJ is entitled "to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians."  Arruda, 314 F. Supp. 2d at 72.  "Inconsistencies between a treating physician's opinion and other evidence in the record are for the ALJ to resolve."  Lee v. Astrue, Civil Action No. 10-10708-DJC, 2011 WL 2748463, at *11 (D. Mass. July 14, 2011) (slip op.).

"Where controlling weight is not given to a treating source opinion, the ALJ considers an array of factors to determine what weight to grant the opinion[.]"  Bourinot, 95 F. Supp. 3d at 175-76.  Those factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole."  Id. at 176.  See also 20 C.F.R. § 404.1527(c)(2)-(6).  However, the regulations do not require the ALJ to list these factors or "to expressly state how each factor was considered," as long as the ALJ "provide[s] 'good reasons' for the weight given to a treating source opinion."  Bourinot, 95 F. Supp. 3d at 177 (quoting 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)).

In this case, the ALJ provided good reasons for his decision to give Dr. Chu's opinions "less weight."  As the ALJ explained in his written decision, Dr. Chu suggested that the plaintiff

may be suffering from a number of conditions that are not substantiated by the plaintiff's medical records. (Dec. 9; Tr. 18). For example, Dr. Chu stated that Morrison suffers from anxiety and depression. (Tr. 752). However, the record contains no evidence that the plaintiff was ever diagnosed with, or attempted to obtain treatment for, either of these conditions. In fact, the medical records, including records of Dr. Chu's own encounters with the plaintiff, consistently describe Morrison's psychiatric status as normal. (See, e.g., Tr. 356 (describing plaintiff as having "no depression or alcohol abuse and feeling safe in relationship"), 504 (describing plaintiff's mental status as "normal mood and affect and active and alert"), 515 (same), 680 (same)). Therefore, Dr. Chu's characterization of Morrison's emotional condition is undermined by the available medical evidence.

Dr. Chu also indicated that Morrison may be suffering from fibromyalgia or mixed connective tissue disease. (Tr. 752). However, there is no indication that either of these conditions has been confirmed by any laboratory tests or physical evaluations. (See Tr. 732-51). While Dr. York, a rheumatologist at Boston Medical Center, had the "impression" that Morrison may be suffering from fibromyalgia complicated by obstructive sleep apnea, as well as benign joint hypermobility syndrome, his records fail to describe a specific basis for his statements. (See Tr. 749-51). Accordingly, the ALJ was acting well within his discretion when he decided to give less weight to Dr. Chu's assertion that Morrison's "working diagnosis [of ] fibromyalgia and mixed connective tissue disease . . . make[ ] it difficult to stand for long periods of time because it induces pain in her joints." (See Tr. 752). In any event, the ALJ restricted Morrison to sedentary work, which requires a limited amount of standing.

The ALJ further explained that while Dr. Chu described various limitations resulting from Morrison's physical impairments, she did not specify the degree to which those limitations would impact the plaintiff's ability to perform various tasks. (See Dec. 9; Tr. 18). For example, but without limitation, Dr. Chu stated that Morrison's fatigue and muscle pain made it "*difficult to stand for long periods of time,*" and that her foot pain made it "*difficult to stand or walk for periods at a time.*" (Tr. 752 (emphasis added)). She also stated that Morrison's shortness of breath made it "*difficult to work any jobs that require her to bend, lift, move things or walk short distances.*" (Id. (emphasis added)). However, she did not explain how long the plaintiff could stand or walk before she would need to sit down. Nor did she indicate whether the limitations on Morrison's ability to bend, lift and move objects would preclude her from lifting or carrying even light objects such as files or papers. In order to make a finding regarding a claimant's RFC, the ALJ must determine "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Because Dr. Chu's opinions provided limited insight as to what Morrison still could do notwithstanding her impairments, the ALJ was justified in giving them "less weight."

To the extent Morrison argues that the opinion of Dr. Goswami, the State agency consultant, cannot outweigh the opinion of a treating physician, this argument too lacks merit. "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims." Babcock v. Barnhart, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) (quotations and citations omitted). Accordingly, "[i]t is well settled that an ALJ is entitled to rely upon the[ir] opinions" in evaluating a claim of disability. Colvin v. Astrue, No. 09-CV-946S, 2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011) (unpub. op.). See also Social Security Ruling ("SSR") 96-

6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996) (because State agency medical consultants are considered experts in the evaluation of disability claims, the social security regulations "*require* administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians" (emphasis added)). Moreover, the ALJ is entitled to adopt the State agency physician's opinion, even if it conflicts with the opinions of the claimant's treating physicians.  See Monroe, 471 F. Supp. 2d at 212-13 (finding that ALJ's decision to adopt consulting physician's opinions over the conclusions of claimant's treating physician was supported by substantial evidence).  "The hearing officer's choice to accept a non-treating, non-examining physician's assessment is completely permissible within the regulations 'provided there is support for the result in the record.'"  Id. (quoting Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994)).

In this case, Dr. Goswami's RFC assessment was the only opinion from a medical expert that specifically described what Morrison could do despite her impairments.  Additionally, the ALJ determined, following a thorough review of the plaintiff's medical history and consideration of her testimony at the hearing, that Dr. Goswami's "opinion is generally consistent with and supported by the record as a whole."  (Dec. 10; Tr. 19; see also Dec. 4-6; Tr. 13-15 (detailing Morrison's medical history and hearing testimony).  Thus, there was no error is his decision to give more weight to Dr. Goswami's opinion than to the opinion of Dr. Chu.[4]

---

[4] Morrison contends that "[t]here is no support for the assertion that Plaintiff can stand and/or walk two hours in an eight-hour workday, or that she has any ability, on even an occasional basis, to climb, balance, stoop, kneel, crouch or crawl."  (Pl. Mem. at 10).  This argument is belied by the record.  As described above, Dr. Goswami determined that the plaintiff had the capacity to stand and/or walk, with normal breaks, for about 6 hours in an 8-hour workday, and to occasionally climb ramps or stairs,

Finally, there is no merit to the plaintiff's contention that the ALJ "substituted his own judgment about the outcome of Plaintiff's treatment for her pulmonary emboli, sleep apnea, chest pain and tightness, and shortness of breath rather than rely on medically supported opinion of the treating physician." (Pl. Mem. at 8). As described above, the ALJ based his finding of the plaintiff's RFC on a "careful consideration of the entire record," including the medical evidence, the available opinion evidence and the plaintiff's own allegations. (See Dec. Finding #5; Tr. 16; Dec. 8-10; Tr. 17-19). While he gave some weight to Dr. Goswami's assessment that the plaintiff retained the physical capacity to carry out a limited range of light work, he accounted for other evidence in the record, including Dr. Chu's opinions, the medical evidence and Morrison's own testimony, by reducing her exertional level to sedentary. (See Dec. 9-10; Tr. 18-19). In short, the ALJ relied on evidence in the record rather than his own assumptions and opinions to conclude that the plaintiff remained capable of performing a limited range of sedentary work.

C.    **Plaintiff's Challenge to the ALJ's Credibility Assessment**

In connection with his RFC assessment, the ALJ evaluated the credibility of Morrison's claim that the intensity, persistence and limiting effects of the pain and other symptoms she suffers as a result of her impairments render her incapable of working. Although the ALJ found that Morrison's medical conditions "could reasonably be expected to cause the alleged symptoms[,]" he determined that "[h]er alleged limitations are self-imposed restrictions that are not fully supported by the medical evidence and are inconsistent with some of her own

---

balance, stoop, kneel, crouch or crawl. (Tr. 70-71, 82-83). For the reasons detailed herein, the ALJ was entitled to credit Dr. Goswami's opinion on these matters.

actions." (Dec. 8-9; Tr. 17-18). Accordingly, he concluded that her statements regarding the intensity, persistence and limiting effects of her symptoms were "not entirely credible[.]" (Dec. 9; Tr. 18). The plaintiff argues that there is no support for these findings. (See Pl. Mem. at 10). This court disagrees, and finds that the ALJ's credibility determination was based on substantial evidence.

In support of his conclusion regarding Morrison's credibility, the ALJ first described why he found Morrison's claim of disabling symptoms at odds with her own actions. As the ALJ explained in his written decision, "[t]he claimant's ability to carry out activities of daily living remains reasonably intact." (Dec. 8; Tr. 17). Thus, the ALJ found it significant that the plaintiff could prepare some light meals and complete certain household chores, had no difficulty with personal hygiene, was able to drive and go outside on a daily basis, and was able to provide care for her cats such as giving them food and water. (Dec. 7-8; Tr. 16-17). He also noted that Morrison was able to perform shopping on a computer, handle her own finances, interact well with others and act in her own interest. (Dec. 8; Tr. 17). In short, the ALJ determined that Morrison had no more than mild restrictions in her activities of daily living, and no difficulties in social functioning. (Dec. 7; Tr. 16).

The ALJ's findings regarding Morrison's daily activities are supported by substantial evidence in the record. On January 18, 2013, Morrison completed a Function Report at the request of the Social Security Administration. (Tr. 185-93). Therein, Morrison indicated that she has no problems with personal care, goes outside on a daily basis, is able to perform sedentary activities, and has no difficulties managing her finances. (Tr. 187-90). She also stated that she regularly spends time with others, and has no cognitive limitations. (Tr. 190). During

the hearing held on July 16, 2014, the plaintiff testified that she is able to shower, dress and prepare simple meals, that she gets up every two hours and moves around, and that she is able to complete simple chores such as making the bed and folding laundry. (Tr. 32, 35, 40). She also stated that she is able to drive and ride in a car, and that she typically spends her day reading, watching television, listening to music, and speaking on the phone with family and friends. (Tr. 32, 37). When asked about her social functioning, Morrison testified that she has no problems interacting with other people. (Tr. 38). She further indicated that she is able to go to the movies or to events such as a wedding, as long as she is dropped off close to the door. (Tr. 43-44). Thus, although Morrison's testimony and written answers to questions reveal that her activities are hindered by her physical limitations, and that she is no longer able to complete tasks that she was able to perform prior to her hospitalization in 2012, there is adequate evidence to support the ALJ's finding that she has no more than mild restrictions in her ability to carry out day-to-day activities and is not as limited as she claims.

The ALJ also relied on the medical records to support his determination that Morrison's complaints of disabling symptoms were not entirely credible and that her impairments, while severe, "are not so limiting that the claimant could not perform at the [RFC] level set forth above." (See Dec. 8; Tr. 17). In particular, the ALJ found that "[Morrison's] treatment has been effective in controlling her pulmonary embolism condition[,]" and that "[s]he has undergone successful bariatric surgery that has provided significant weight loss." (Id.). He also found it significant that "[Morrison's] treatment has largely been of a routine or conservative nature[,]" and that various tests and examinations have revealed no apparent cause for her complaints of

chest pain and shortness of breath. (Dec. 8-9; Tr. 17-18). Substantial evidence supports the ALJ's findings on these matters as well.

As the ALJ stated in his written decision, the records show that "[a]s of December 2012, [Morrison's] acute pulmonary embolus was resolved[.]" (Dec. 9; Tr. 18; see also Tr. 409). Her anemia also resolved with treatment, and no cause was ever identified. (See, e.g., Tr. 352, 354). Morrison has since been monitored closely for her pulmonary condition, and has remained on a therapeutic level of Coumadin. (Dec. 9; Tr. 18; see also, e.g., Tr. 349-60, 371-74). Although she has undergone various tests in response to her complaints of shortness of breath and intermittent chest pain, including pulmonary function tests, a CT scan, a stress test and an echocardiogram, all of the objective findings have essentially been normal. (Dec. 9; Tr. 18; see also Tr. 336-37, 409, 504, 615-17, 695-98). In addition, Morrison's treating physicians consistently reported that the plaintiff appeared to be in no acute distress, could ambulate normally, and displayed unremarkable cardiovascular and respiratory findings upon physical examination. (See, e.g., Tr. 261, 268, 293, 317, 351, 353, 356, 507, 509-10, 650). This evidence supports the ALJ's finding that Morrison's claim of disabling symptoms was not entirely credible, and that she would not be precluded from carrying out a limited range of sedentary work.

With respect to Morrison's obesity, the ALJ noted that the plaintiff had been evaluated by multiple specialists, and cleared to receive a vertical sleeve gastrectomy. (See Dec. 9; Tr. 18; see also Tr. 713-15). The medical records indicate that the surgery took place in September 2013, and that the plaintiff has lost a significant amount of weight since then. (See, e.g., Tr. 624, 677, 713-15). The medical records also indicate that Morrison was given a CPAP mask to treat her obstructive sleep apnea. (See Tr. 509, 514). A sleep study using the mask showed

that it "helped a great deal" with her condition. (Tr. 514). This evidence too provides substantial support for the ALJ's conclusion that Morrison's impairments were not so limiting as to preclude her from performing sedentary work, and that the plaintiff's claim of disabling symptoms was not entirely credible.

Finally, the ALJ's decision to discount Morrison's credibility is supported by Dr. Goswami's opinion that her impairments would not preclude her from performing light work. While the ALJ further reduced Morrison's exertional level to sedentary in order to account for evidence in the medical record and Morrison's own testimony, as described above, he reasonably relied on Dr. Goswami's opinion as further evidence that the plaintiff remained capable of working.[5]

Ordinarily, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how [her] testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987). Because the ALJ in this case made specific findings, and those findings were supported by substantial evidence in the record, his determination regarding Morrison's credibility is entitled to deference and must be upheld.

---

[5] During the hearing on the parties' cross-motions, the plaintiff argued that the ALJ's credibility assessment was undermined by evidence showing that Dr. Goswami found the plaintiff's complaints to be credible. This argument is not persuasive. Although Dr. Goswami may have credited Morrison's allegations of severe impairments, she found that the plaintiff still could perform a limited range of light work. The ALJ gave more credit to Morrison's claims by limiting her to sedentary work.

## IV. <u>CONCLUSION</u>

For all the reasons detailed herein, the "Plaintiff's Motion for an Order Reversing or Remanding the Decision of the Commissioner" (Docket No. 14) is DENIED, and the defendant's "Motion to Affirm the Commissioner's Decision" (Docket No. 16) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge